---

(69 Misc. Rep. 374.)

### In re KEEN.

(Supreme Court, Special Term, New York County. December, 1902.)

1. ATTORNEY AND CLIENT—ACCOUNTING.
   Attorneys are bound to account to their clients for moneys received by them as such, except as to a reasonable sum for counsel fees and disbursements.

In the matter of Henry Keen. Application for an order requiring S. V. Constant and Linus A. Gould to turn over moneys received by them belonging to him.

J. Hampden Dougherty, for petitioner.
Robert L. Wensley, for respondent Gould.

SCOTT, J. The applicant is a foreign tailor having customers in this country. In October, 1899, he was represented here by an agent named Hutchings, who, on or about October 14th of that year, was arrested upon a charge of criminal violation of the federal revenue laws. Hutchings seems to have intended to retain the service of the respondent Constant; but, as the latter was out of town, his call for assistance was at first responded to by a Mr. Bogle, who appears to have been the representative of Mr. Constant. At Bogle's request Hutchings cabled to his employer, Keen, for the sum of $2,000, to be used for the indemnification of bail. This sum was forwarded by a draft to Hutchings' order upon a banking house in this city. Bail was given by Hutchings on October 16th, and then and thereafter the respondent Gould appeared and acted as counsel for him; but Bogle, whose only connection with the case was that he represented Constant, appeared at all the hearings. At about the time that Gould took active charge of the matter, Hutchings in-

¶ 1. See Attorney and Client, vol. 5, Cent. Dig. §§ 232, 234.

dorsed and delivered to him the draft for $2,000, which he after-
wards cashed and deposited in his own bank account. Constant re-
turned to the city early in November, and seems to have thereafter
undertaken to keep the applicant, Keen, advised of the progress of
the proceedings.

The defenses urged against the prayer of the applicant are tech-
nical, and not always wholly ingenuous. First, it is insisted by
Mr. Constant that he received no part of the money, and had no
connection with the case, except as the disinterested friend of all
the parties. Mr. Gould also tries to absolve Mr. Constant from
any responsibility in the matter. It may be, and doubtless is, true
that Mr. Constant did not receive any of the money; but this does
not wholly clear him from responsibility to account for it. He,
through his representative, Bogle, was the first person to act in the
matter; and it was at Bogle's suggestion, made as Constant's rep-
resentative, that Keen was induced to send the money to Hutchings.
So it was directly a result of the advice or suggestion of Constant's
representative that the applicant, Keen, was first induced to part
with his money. The precise relation between Constant and Gould
is not clearly disclosed. They occupy parts of the same suite of
offices, and their relations appear to be intimate. In letters written
to Keen, before any question arose as to who should account to
him for his money, Constant wrote as follows:

"While I was away Mr. Hutchings was arrested, as you were duly notified.
Mr. Bogle, who appeared for him, is a lawyer associated with me, as is Mr.
L. A. Gould, who wrote you later," etc.

In the same letter he says:

"We do not know how strong a case the government will be able to make.
*   *   * To-morrow at the hearing we will get at some of their case," etc.

In a later letter Constant writes:

"We have every hope that they will not be able to substantiate their case."

In a still later letter he says:

"I happened to be out of the city on the Saturday when Hutchings was
taken before the commissioner, and in my absence Mr. Bogle appeared. At
the subsequent hearings it seemed to me advisable to have Mr. Gould appear
as the attorney of record, for the reason that my name was on the books
taken from Mr. Hutchings at the time as being one of his customers."

In the same letter Mr. Constant said:

"As Mr. Gould has already written you, the amount expended, including the
amount retained by us for our expenses in the matter, amounts to $1,500, and,
as Mr. Gould has forwarded you his check for the $500 balance, it will clear
up the whole matter to your satisfaction. Mr. Hutchings had an idea in a
recent conversation that we could return to you the whole $2,000, and then
make some charge for our services; but, as the matter developed, the course
pursued by us seemed the best."

In the face of these declarations I cannot absolve Mr. Constant
from responsibility for the disposition of the money, or accept his
present statement that there was no relationship between himself and
Mr. Gould with regard to the expenditure of the applicant's money.
I deem it to be established by Mr. Constant's own statements that
he and Mr. Gould were associated in the defense of Mr. Hutchings,

and jointly liable to account for the disposition of the applicant's money. It is perfectly obvious that both Mr. Gould and Mr. Constant knew from the very beginning that the money was Mr. Keen's, and considered that in defending Hutchings they were in reality acting on Keen's retainer, and quite as much for his benefit as for the benefit of Hutchings. I am not disposed on a motion of this character to accede to the contention made on behalf of Mr. Gould that the legal title to the money passed from Keen to Hutchings before it was paid over, and hence that technically it was Hutchings' money, and not Keen's, which the respondent received and retained. Every act of Gould and Constant indicates that this theory is an afterthought, never entertained until this proceeding was instituted. It would be a reproach upon the power of the court to supervise the conduct of its own officers, if the applicant should be denied an accounting upon such highly technical objections as are interposed here. My conclusion is that the respondents acted as attorneys for the applicant, and received his money in that capacity, and should account to him for all of it, except a reasonable sum for counsel fees and disbursements.

Unfortunately the papers furnish no information upon which I can estimate how much the defendants should be permitted to retain. Neither side shows in detail what services were rendered or what expenses were incurred. The applicant makes an estimate of the value of respondents' services, but obviously he is not qualified to form an estimate on this subject. The respondents, who have all the knowledge upon the subject, give no details, and content themselves with general statements and mysterious suggestions of extraordinary efforts and expenditures which they were compelled to make. I see no alternative except to appoint a referee to take evidence as to the fair value of respondents' services, and the amount of their reasonable expenditures. I take this course with hesitation, because the expense of such a reference may be out of all proportion to the amount which will probably be recovered. If the applicant hesitates to incur this expense, he may, if he so elects, discontinue this proceeding without prejudice to an action.

Ordered accordingly.